IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JUL 2 6 2011

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSE DE JESUS REYES OROZCO )<br>a/k/a "PRIMO," )<br>)<br>)<br>Defendant. ) | Criminal No. 1:17-MJ-352 |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Justin Chung, Task Force Officer of the Drug Enforcement Administration (DEA), Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the following:

### INTRODUCTION

1. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am deputized under Title 21 authority by the DEA to investigate narcotic related offenses. I have been a Law Enforcement Officer with the Arlington County Police Department since December of 1997 and with the Organized Crime Section, Narcotics Enforcement Unit, Arlington County Police Department for approximately five years. I have been a task force officer with the DEA for approximately two years.

1

2. During my time in law enforcement, I have participated in the application for and execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, drug proceeds in the form of bulk U.S. currency, weapons, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the methods used by traffickers of controlled substances and the nature and appearance of illegal narcotics. I have received extensive training in drug identification, drug distribution methods, and drug enforcement techniques from various federal, state, and local agencies, including the Northern Virginia Criminal Justice Academy and the Virginia Department of Criminal Justice.

3. Based upon this experience, I have become knowledgeable of the methods and modes of narcotics operations, and the language and patterns of drug abuse and trafficking. During the course of my participation in investigations of narcotics trafficking organizations, I have testified in trial, grand jury proceedings, and at preliminary and detention hearings. Through my employment with the Arlington County Police Department and tenure with the DEA as a task force officer, I have gained knowledge in the use of various investigative techniques, including the utilization of wiretaps, physical surveillance, undercover agents, confidential informants, cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

4. This affidavit is made in support of a criminal complaint charging JOSE DE JESUS REYES OROZCO with distribution of five-hundred (500) grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, sections 841(a)(1) and 846.

5. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the United States. The facts and information contained in this affidavit are based upon my personal knowledge and information obtained from other law enforcement officers and witnesses. All observations referenced in this affidavit that were not made by me were relayed to me by the person who made such observation. This affidavit contains information necessary to support probable cause for this application.

## BACKGROUND

6. Law enforcement investigated the cocaine trafficking activities of JOSE DE JESUS REYES OROZCO (hereinafter REYES) of Alexandria, Virginia. During the course of this investigation, law enforcement officers utilized a confidential source, CS. CS will be referred to in the masculine gender regardless of his/her true gender.

7. When possible, statements made by CS have been corroborated through various investigative techniques, including monitored telephone intercepts and surveillance. To my knowledge, CS has never provided law enforcement with false or misleading statements. CS has agreed to cooperate in the instant case in exchange for monetary payments. CS has also agreed to assist the government in exchange for immigration considerations. CS has an arrest and conviction for a narcotics/money laundering offense in 2007 and was detained for immigration related matters in 2004 and 2015.

## PROBABLE CAUSE

8. In early March of 2017, CS contacted and arranged a meeting with REYES. From March 2017 through July 2017, law enforcement conducted one controlled meeting where CS obtained a sample of cocaine from REYES, and six (6) controlled purchases from REYES with the assistance of CS.

### CS' INITIAL MEETING WITH REYES

9. On or about March 3, 2017, agents met CS at a predetermined location in Alexandria, Virginia, within the Eastern District of Virginia. At the direction of law enforcement, CS called REYES and established a time to meet at a restaurant. During the meeting, REYES quoted CS a price of $1,250 U.S. currency (USC) per ounce of cocaine. At one point during the meeting, REYES went into the men's bathroom. When REYES returned, REYES provided CS with a sample of cocaine concealed within a crumpled up paper receipt. REYES indicated he (REYES) could supply CS with whatever CS needed. CS returned to the staging area where CS gave law enforcement the sample of cocaine that REYES had given him. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results indicated that the net weight contained approximately .58 grams of cocaine hydrochloride (HCL).

### CS CONTROLLED PURCHASE #1

10. In early March of 2017, law enforcement agents instructed CS to facilitate the purchase of four (4) ounces of cocaine from REYES. CS engaged in consensually recorded phone calls with REYES. CS discussed the purchase of four (4) ounces of cocaine for $5,000 USC. CS and REYES agreed to meet on or about March 9, 2017, at a restaurant located in Alexandria, Virginia, within the Eastern District of Virginia to complete the transaction. On or

about that day, CS met with REYES, under law enforcement monitoring, and was provided four (4) ounces of cocaine in exchange for $5,000 USC. CS met with law enforcement and turned over approximately four ounces of suspected cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results indicated that the net weight contained approximately 111.38 grams (approximately 3.97 ounces) of cocaine hydrochloride (HCL).

## CS CONTROLLED PURCHASE #2

11. On or about March 28, 2017, law enforcement agents instructed CS to facilitate the purchase of two (2) ounces of cocaine from REYES. CS had a telephonic conversation with REYES and negotiated the purchase of two ounces of cocaine for $1,250 USC per ounce. CS advised REYES that CS would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. On that day, CS met with REYES, under law enforcement monitoring, and purchased two (2) ounces of cocaine for $2,500 USC. After the transaction was complete, CS met with and gave law enforcement approximately two ounces of suspected cocaine purchased from REYES. A field test of the substance CS obtained from REYES during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

## CS CONTROLLED PURCHASE #3

12. Again, in late April 2017, law enforcement agents instructed CS to facilitate the purchase of two (2) ounces of cocaine from REYES. REYES indicated to CS that he would send an associate of his to conduct the transaction. CS had a telephonic conversation with an unidentified co-conspirator (UCC) of REYES, and advised UCC that CS would meet him at a

store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. On or about April 24, 2017, CS met with UCC, under law enforcement monitoring, and purchased from UCC two ounces of suspected cocaine for $2,500 USC. CS met with and gave law enforcement approximately two ounces of suspected cocaine purchased from UCC, as facilitated and negotiated with REYES. A field test of the substance CS obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

## CS CONTROLLED PURCHASE #4

13. In late May 2017, law enforcement agents instructed CS to facilitate the purchase of four (4) ounces of cocaine from REYES. On or about June 1, 2017, law enforcement agents met with CS at a staging area and provided him with $5,000 USC and an audio recording and transmitting device. CS had a telephonic conversation with REYES and advised REYES that CS would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. Law enforcement observed REYES exit his vehicle and enter an undercover vehicle with CS. REYES supplied CS with four ounces of cocaine in exchange for $5,000 USC and then exited the undercover vehicle. CS returned to the staging area where CS gave law enforcement approximately four ounces of suspected cocaine. A field test of the substance CS obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

## CS CONTROLLED PURCHASE #5

14. In early July 2017, law enforcement agents instructed CS to facilitate the purchase of one ounce of cocaine from REYES. On July 7, 2017, law enforcement agents met with CS and

provided him with $1,300 USC and an audio recording and transmitting device. CS had a telephonic conversation with REYES and advised REYES that CS would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. Law enforcement dropped CS at the meet location at a shopping center parking lot located on Richmond Highway in Alexandria, Virginia. Surveillance units observed REYES arrive at the meet location driving a white Chrysler 300 sedan with Maryland registration 8CR3945. CS entered the white Chrysler 300 sedan where CS and REYES conducted the drug transaction. CS returned to the staging area where CS gave law enforcement approximately one ounce of suspected cocaine. A field test of the substance CS obtained during the controlled purchase was positive for the presence of cocaine. The cocaine was submitted to the DEA Mid-Atlantic Laboratory for testing, storage, and safekeeping. The laboratory results are pending.

### CS CONTROLLED PURCHASE #6 AND ARREST OF REYES

15. In late July 2017, law enforcement agents instructed CS to facilitate the purchase of four ounces of cocaine from REYES. On July 25, 2017, law enforcement agents met with CS and provided him with $4,400 USC of evidentiary buy funds. CS had a telephonic conversation with REYES and advised REYES that CS would meet him at a store parking lot located in Alexandria, Virginia, within the Eastern District of Virginia. CS arrived at the meet location, a shopping center parking lot located on Richmond Highway in Alexandria, Virginia. Surveillance units observed REYES arrive at the meet location driving a 2007 Nissan Altima with Maryland registration bearing 6CJ7272. REYES entered the CS's vehicle and completed the drug transaction. Law enforcement responded to the CS's vehicle and took custody of REYES. Law enforcement recovered the $4,400 USC of evidentiary buy funds from REYES' pocket, and approximately four ounces of cocaine from the CS. A field test of the substance CS obtained

during the controlled purchase and subsequent arrest of REYES was positive for the presence of cocaine. The submission of the cocaine is pending to the DEA Mid-Atlantic Laboratory.

16. On July 24, 2017, The Honorable Theresa C. Buchanan issued a search warrant for the premises at 3401 Audubon Avenue, Alexandria, Virginia in conjunction with the ongoing investigation of REYES. Upon the arrest of REYES as referenced supra ¶15, law enforcement executed the search warrant at the premises. Law enforcement agents were able to recover approximately two ounces of cocaine and approximately $9,000 USC in suspected drug proceeds, both located in a bedroom that was identified to REYES. A field test of the substance recovered during the execution and search of the premises was positive for the presence of cocaine. The submission of the cocaine is pending to the DEA Mid-Atlantic Laboratory.

## CONCLUSION

17. Based upon the facts outlined above, I submit there is probable cause to believe that from in and around March 2017 to on or about July 25, 2017, within the Eastern District of Virginia and elsewhere, Jose De Jesus REYES OROZCO distributed 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1).

Justin Chung
Task Force Officer
Drug Enforcement Administration

Subscribed to and sworn to before me, this 26 day of July, 2017.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
The Honorable Theresa C. Buchanan
United States Magistrate Judge